Monica L. Latin
  Texas Bar No. 00787881
Lisa M. Lucas
  Texas Bar No. 24067734
**CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, TX 75202
(214) 855-3000
(214) 855-1333 (Fax)

*Attorneys for Cananwill, Inc.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| RENAISSANCE HOSPITAL GRAND PRAIRIE, INC., | § | Case No. 08-43775-DML |
| | § | Chapter 7 |
| *Debtor,* | § | |
| | § | |
| | § | |
| JOHN DEE SPICER, | § | |
| CHAPTER 7 TRUSTEE, | § | |
| | § | |
| *Plaintiff,* | § | Adv. Proc. No. 10-04188-DML |
| v | § | |
| | § | |
| CANANWILL, INC., | § | |
| | § | |
| *Defendant.* | § | |

## BRIEF IN SUPPORT OF CANANWILL, INC.'S MOTION
## FOR SUMMARY JUDGMENT ON PLAINTIFF'S ORIGINAL
## COMPLAINT AGAINST CANANWILL, INC. TO AVOID TRANSFERS

## Table of Contents

Table of Authorities ................................................................................................ i

I.     SUMMARY ................................................................................................ 1

II.    INTRODUCTION ...................................................................................... 2

III.   SUMMARY JUDGMENT EVIDENCE ................................................... 2

IV.    UNDISPUTED FACTS .............................................................................. 4

       A.    The Bankruptcy Cases ..................................................................... 4

       B.    Pre-Petition Transfers ...................................................................... 5

             a.    Alleged Fraudulent Transfers ................................................. 5

             b.    Alleged Preferential Transfer ................................................. 6

       C.    Plaintiff's Discovery Responses ...................................................... 7

V.     ARGUMENTS AND AUTHORITIES ....................................................... 8

       A.    Standard of Review ......................................................................... 8

       B.    Plaintiff cannot meet his burden of proof with respect to his fraudulent
             transfer claims. .............................................................................. 10

             a.    Plaintiff failed to produce any evidence demonstrating that the HCH
                   Transfers were not made on behalf of HCH. .......................... 11

             b.    As a named insured under each insurance policy relating to the HCH
                   Transfers, HCH received reasonably equivalent value. ......... 12

             c.    Plaintiff's conclusory allegation that HCH received less than
                   reasonably equivalent value in return for the HCH Transfers ignores
                   the Debtors' cash management system and is based on incomplete
                   information. ........................................................................... 13

             d.    The Court must grant summary judgment as to the Plaintiff's
                   fraudulent transfer claims. ................................................... 14

       C.    Plaintiff cannot meet his burden of proof on his preferential transfer claim. ........ 15

             a.    Plaintiff cannot establish that the Dallas Transfer was a transfer to or
                   for the benefit of a creditor. ................................................ 15

             b.    Plaintiff cannot establish that the Dallas Transfer was a transfer for or
                   on account of an antecedent debt owed by the Debtor before such
                   transfer was made. ................................................................ 16

             c.    Plaintiff cannot establish that the Dallas Transfer enabled Cananwill
                   to receive more than it would have received if the case were a case
                   under chapter 7, the transfer had not been made, and Cananwill
                   received payment of such debt to the extent provided under title 11. ....... 17

             d.    The Court must grant summary judgment as to the Plaintiff's
                   preferential transfer claims. ................................................ 19

**VI.**   CONCLUSION........................................................................................................................19

# TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................9

*Besing v. Hawthorne (In re Besing)*,
    981 F.2d 1488 (5th Cir. 1993) ..................................................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..............................................................................9-10

*Dombrowski v. Eastland*,
    387 U.S. 82 (1967).....................................................................................9

*First Nat'l Bank of Arizona v. Cities Service Co.*,
    391 U.S. 253 (1968)...................................................................................9

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir. 1986) ...................................................................9

*Lujan v. National Wildlife Fed'n*,
    497 U.S. 871 (1990)...................................................................................9

*Mancuso v. T. Ishida USA, Inc. (In re Sullivan)*,
    161 B.R. 776 (Bankr. N.D. Tex. 1993)....................................................10

*Southmark Corp. v. Riddle (In re Southmark Corp.)*,
    138 B.R. 820 (Bankr. N.D. Tex. 1992)....................................................10

*U.S. v. Bloom*,
    112 F.3d 200 (5th Cir. 1997) .....................................................................9

i_1452987v.8

STATUTES

11 U.S.C. § 547 ........................................................................................................1, 19

11 U.S.C. § 547(b) .................................................................................................. 15-17

11 U.S.C. § 547(b)(1) ............................................................................................. 15-16

11 U.S.C. § 547(b)(1) and (2) ...............................................................................1, 19

11 U.S.C. § 547(b)(2) .............................................................................................. 16-17

11 U.S.C. § 547(b)(5) ........................................................................................2, 17, 19

11 U.S.C. § 548 ............................................................................................................10

11 U.S.C. § 548(a)(1)(B) ........................................................................................1, 10

i_1452987v.8

TO THE HONORABLE D. MICHAEL LYNN, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Cananwill, Inc. ("Cananwill"), by and through its undersigned counsel, and files this Brief in Support of Cananwill, Inc.'s Motion for Summary Judgment on the Plaintiff's Original Complaint Against Cananwill, Inc. to Avoid Transfers (the "Brief in Support"). In support thereof, Cananwill respectfully states as follows:

## I.    SUMMARY

As a matter of law, summary judgment should be granted in favor of Cananwill because the Plaintiff has failed to provide sufficient evidence to support his fraudulent and preferential transfer claims and because, as a matter of law, Plaintiff's claims cannot be sustained.

Plaintiff cannot establish that HCH received less than reasonably equivalent value in return for the HCH Transfers (defined below) as required by 11 U.S.C. § 548(a)(1)(B). Plaintiff failed to produce any evidence demonstrating that the HCH Transfers were not made on behalf of HCH. Further, there is no question that HCH was a named insured under the insurance policies related to the HCH Transfers. Finally, the Plaintiff's allegations ignore the Debtors' cash management system and the recording of intercompany liabilities, and are based on incomplete information. Therefore, Cananwill is entitled to summary judgment on the Plaintiff's fraudulent transfer claims.

Similarly, the Plaintiff cannot establish that the Dallas Transfer (defined below) was a preferential transfer to Cananwill under 11 U.S.C. § 547. Plaintiff failed to produce any evidence to support his allegations that Cananwill was a creditor of Dallas Hospital, or that the transfer was on account of an antecedent debt owed by Dallas Hospital, as required by 11 U.S.C. § 547(b)(1) and (2). Additionally, no liquidation analysis has been prepared, and the Plaintiff failed to provide any additional evidence in support of his allegation that Cananwill received

1

more than it would have under chapter 7, as required by 11 U.S.C. § 547(b)(5). Finally, the

Plaintiff's conclusory allegations are based on incomplete information. Therefore, Cananwill is

entitled to summary judgment on the Plaintiff's preferential transfer claims.

## II.     INTRODUCTION

Cananwill provides insurance premium financing for commercial property, general

liability, and malpractice insurance policies. Pre-petition, one or more of the Debtors financed

some of the Debtors' annual insurance policies through Cananwill.

Plaintiff, as chapter 7 Trustee of the Estates of Houston Community Hospital, Inc.

("HCH") and Renaissance Hospital, Dallas, Inc. ("Dallas Hospital"), has initiated this adversary

proceeding, alleging that certain payments made by Debtors HCH and Dallas Hospital with

respect to certain premium finance agreements are avoidable as either fraudulent transfers (with

respect to HCH) or preferential transfers (with respect to Dallas Hospital).

Plaintiff has blatantly ignored the fact that HCH and Dallas Hospital were named

insureds under each policy relating to the premium finance agreements at issue in this case.

Plaintiff's case begins and ends when this one fact and its due import. As named insureds,

Debtors HCH and Dallas Hospital necessarily received reasonably equivalent value in exchange

for any premium payments they made and the payments were clearly contemporaneous

exchanges for value.

## III.     SUMMARY JUDGMENT EVIDENCE

Cananwill's Motion for Summary Judgment is supplemented by the following

documents, all of which are included in the Appendix filed contemporaneously herewith and

incorporated herein by reference for all purposes:

i_1452987v.8

1.     Motion for an Order Authorizing Continued Use of Existing (A) Cash Management System, (B) Accounts, and (C) Deposit Practices and Exhibit A thereto, Docket No. 47, Case No. 08-43775 (the "Cash Management Motion");

2.     Affidavit of Jerome B. Mee In Support of Chapter 11 Petitions, First-Day Motions, Applications, and Orders Filed on August 26 and 27, 2008, Docket No. 62, Case No. 08-43775 ("Mee Affidavit");

3.     Interim Order Authorizing Continued Use of Existing (A) Cash Management System, (B) Accounts, and (C) Deposit Practice, Docket No. 117, Case No. 08-43775;

4.     Plaintiff's Responses to Cananwill, Inc.'s First Request for Production of Documents on Behalf of the Chapter 7 Estate of Houston Community Hospital ("Plaintiff's Responses to First Request for Production on Behalf of HCH");

5.     Plaintiff's Responses to Cananwill, Inc.'s First Request for Production of Documents on Behalf of the Chapter 7 Estate of Renaissance Hospital Dallas, Inc. ("Plaintiff's Responses to First Request for Production on Behalf of Dallas Hospital");

6.     Plaintiff's Responses to Cananwill, Inc.'s Second Request for Production on Behalf of the Chapter 7 Estate of Houston Community Hospital, Inc. and Renaissance Hospital Dallas, Inc. ("Plaintiff's Responses to Second Request for Production");

7.     Plaintiff's Responses to Cananwill, Inc.'s First Set of Interrogatories on Behalf of the Chapter 7 Estate of Houston Community Hospital, Inc. and Renaissance Hospital Dallas, Inc. ("Plaintiff's Responses to First Set of Interrogatories");

8.     Plaintiff's Responses to Cananwill, Inc.'s Third Request for Production on Behalf of the Chapter 7 Estate of Houston Community Hospital, Inc. and Renaissance Hospital Dallas, Inc. ("Plaintiff's Responses to Third Request for Production");

9.      Plaintiff's Responses to Cananwill, Inc.'s Second Set of Interrogatories on Behalf

of the Chapter 7 Estate of Houston Community Hospital, Inc. and Renaissance Hospital Dallas,

Inc. ("Plaintiff's Responses to Second Set of Interrogatories"); and

10.     Affidavit of Lisa M. Lucas.

## IV.    UNDISPUTED FACTS

### A.    The Bankruptcy Cases

On August 21, 2008, Renaissance Hospital-Grand Prairie, Inc. d/b/a Renaissance

Hospital Grand Prairie ("Grand Prairie") filed a voluntary petition for relief under chapter 11 of

the Bankruptcy Code, and on August 26, 2008, Dallas Hospital, HCH, Renaissance Hospitals,

Inc. d/b/a Renaissance Hospital – Groves ("Groves"), and Renaissance Healthcare Systems, Inc.

("RHSI", together with Grand Prairie, Dallas Hospital, HCH, and Groves, the "Debtors") filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  (Complaint, ¶ 1).

On August 27, 2008, Dallas Hospital, HCH, Groves, and RHSI filed the Cash

Management Motion requesting, *inter alia*, that the Court enter an order allowing the estates to

continue managing their financial affairs in a manner consistent with the disclosures made within

the motion, and consistent with the diagram attached thereto as Exhibit A.  (Cash Management

Motion and Exhibit A thereto, App. 1-17).

As set forth in the Cash Management Motion and the Mee Affidavit, HCH's account at

Metro Bank acted as central operating account for "all operating entities" (i.e., for all the

Debtors).   (Cash Management Motion, ¶ 12 and Exhibit A thereto, App. 6-7 and 14; Mee

Affidavit ¶ 34, App. 33-35).

On September 4, 2008, this Court entered an interim order authorizing the Debtors'

continued use of the existing cash management system, accounts, and deposit practices.  (App.

66-69).

4

On September 10, 2008, this Court ordered the joint administration of the Debtors'
bankruptcy estates. (Case No. 08-43775, Docket No. 149; Complaint ¶ 2).

On September 23, 2009, the Debtors' bankruptcy cases converted to proceedings under
chapter 7, and John Dee Spicer was appointed as the chapter 7 Trustee of each bankruptcy estate
(Case No. 08-43775, Docket No. 1378; Complaint ¶ 3).

On September 21, 2010, Plaintiff filed his Original Complaint Against Cananwill, Inc. to
Avoid Transfers. (Docket No. 1).

Pursuant to the Agreed Scheduling Order, discovery closed in this adversary proceeding
on March 14, 2011. (Docket No. 7).

### B.    Pre-Petition Transfers

### a.    *Alleged Fraudulent Transfers*

Plaintiff alleges that the following pre-petition transfers to Cananwill from HCH's
account at First National Bank are avoidable as fraudulent transfers under the Bankruptcy Code:
$15,964.56 in March 2008; $15,964.56 in April 2008; $5,000 in May 2008; and $12,231.73 in
May 2008 (the "HCH Transfers") (Complaint, ¶ 9; App. 119-122).

Cananwill does not dispute that it received the HCH Transfers.[1]

The HCH Transfers were made in connection with one or more of the following
insurance policies: CA000006922-02, CA000006922-03, and ZMD 9137297-01.  (Plaintiff's

---

[1] Cananwill does not concede that such transfers were transfers of HCH's interest in property, in light of the Debtors
Cash Management Motion and the limited bank records produced to date by the Plaintiff.

Responses to First Set of Interrogatories, Response No.1, App. 97-98; Lucas Affidavit ¶ 8, App. 116-117 and 124-279).[2]

Under each policy related to the HCH Transfers, HCH is listed as a named insured. (App. 125, 127, 129, 131, 140, 155, 157, 164, 166, 195, 212, 241, 243). Additionally, the HCH location is listed as a covered or designated premises.[3] *Id.*

HCH's Pre-Petition A/P Aging Summary shows the following accounts payable due to Cananwill, Inc.: $4,554.13 (current), as of January 31, 2008; $20,518.69 (current), as of February 29, 2008; $20,518.69 (current), as of March 31, 2008; $24,375.62 (current), as of May 31, 2008; $24,375.62 (aged 1-30), as of June 30, 2008; $24,375.62 (aged 31-60), as of July 31, 2008, and $24,375.62 (aged 61-90), as of August 26, 2008. (App. 488, 497, 506, 525, 534, 543, 552).

### b.    *Alleged Preferential Transfer*

Plaintiff alleges that the following pre-petition transfer to Cananwill from Dallas Hospital's account at First National Bank is avoidable as a preferential transfer: $19,530.80 in June of 2008. (the "Dallas Transfer") (Complaint, ¶ 19; App. 317).

The Dallas Transfer was made in connection with one of the following insurance policies: CA000006922-02, CA000006922-03, and ZMD 9137297-01. (Plaintiff's Responses to

---

[2] While Cananwill requested that the Plaintiff identify the specific policy to which each HCH Transfer relates, the Plaintiff failed to do so. (Plaintiff's Responses to First Set of Interrogatories, Response No. 1, App. 97-98). Instead, the Plaintiff simply states that "the policy numbers on all endorsements found in the former records of Renaissance Healthcare Systems, Inc., now owned by LTHM, are: CA000006922-02, CA000006922-03, and ZMD 9137297-01." *Id.*

[3] *See* Mee Affidavit, ¶ 11, stating the location of HCH as 2807 Little York Rd., Houston, Texas. App. 23.

i_1452987v.8

First Set of Interrogatories, Response to Interrogatory No. 1, App. 97-98; Lucas Affidavit ¶ 8, App. 116-117 and 318-473).[4]

Under each policy related to the Dallas Transfer, Dallas is listed as a named insured. (App. 319, 334, 358, 406).

### C.    Plaintiff's Discovery Responses

In response to Cananwill's request for production of "[a]ll insurance policies and related financing agreements on account of which payments were made that you contend constitute fraudulent and/or preferential transfers to Cananwill" and "any and all documents regarding or related to [those] insurance policies and related financing agreements," Plaintiff produced only one unexecuted page of one premium finance agreement marked "SIGNATURE ON FILE," two advices of payment, a statement of account, one fax cover page, and the insurance policies listed above. (Lucas Affidavit, ¶ 8, App. 116-117, 124-279, 307-312, 478-483, 318-473).

Plaintiff did not produce the premium finance agreement or any other documents relating to the Dallas Transfer, aside from a copy of the check representing the transfer, Dallas Hospital's bank account statements showing that the check was cashed, and the insurance policies listed above.  (Lucas Affidavit, ¶¶ 8 and 9, App. 116-117, 317-473; Plaintiff's Responses to First Set of Interrogatories, Response No. 1 (indicating that the advices of payment, statement of account, and the one page of the premium finance agreement relate to the HCH Transfers), App. 97-98).

Plaintiff has not prepared any insolvency or liquidation analyses with respect to Dallas Hospital's bankruptcy estate. (Plaintiff's Responses to First Request for Production on Behalf of Dallas Hospital, Response Nos. 7, 8, 9, and 10, App. 86).

---

[4] While Cananwill requested that the Plaintiff identify the specific policy to which the Dallas Transfer relates, the Plaintiff failed to do so.  (Plaintiff's Responses to First Set of Interrogatories, Response to Interrogatory No.1, App. 97-98).  Instead, the Plaintiff simply states "the policy numbers on all endorsements found in the former records of Renaissance Healthcare Systems, Inc., now owned by LTHM, are:  CA000006922-02, CA000006922-03, and ZMD 9137297-01. *Id.*

7

Plaintiff has not reviewed the complete financial records of the Debtors relating to the

HCH Transfers and the Dallas Transfer, or the Debtors' pre-petition cash management

procedures as outlined in the Cash Management Motion and Mee Affidavit.   (Plaintiff's

Response to First Request for Production on Behalf of HCH, ¶¶ 2 and 3, Response Nos. 1, 6, and

8, App. 73-76; Plaintiff's Response to First Request for Production on Behalf of Dallas Hospital,

¶¶ 2 and 3, Response Nos. 1 and 6, App. 83-86;   Plaintiff's Response to Second Request for

Production, ¶¶ 2 and 3, Response No. 15 ("Trustee does not have the entire general ledger of any

Debtor or Related or Affiliated Debtor"), App. 91-92; Plaintiff's Response to Third Request for

Production ¶¶ 2 and 3, Response Nos. 18 ("Trustee does not have copies of any records for 2007

for the Debtors, nor did he rely upon the same, as he was advised by Bridge Associates, LLC,

that the financial records of HCH, [Dallas Hospital] and Affiliated Debtors were incomplete for

the years prior to 2008"), and 19 ("The Trustee only has the Houston Community Hospital, Inc.

I/C Transaction Ledger..."), App. 106-108; Plaintiff's Response to First Set of Interrogatories,

¶¶ 2 and 3, Response Nos. 1, 9 ("The Trustee only has records of inter-company transfers

between HCH and its affiliates for the period of January 1, 2008 through August 26, 2008), 11,

and 12, App. 96-98, 101-102; Plaintiff's Response to Second Set of Interrogatories, ¶¶ 2 and 3,

App. 111-112).

## V.      ARGUMENTS AND AUTHORITIES

### A.      Standard of Review

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Bankruptcy Rule

7056, summary judgment must be granted if the pleadings and the evidence on file "shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."   Summary judgment is not a disfavored procedural shortcut, but rather, it is a

8

necessary tool which "affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material when, under the governing substantive law, it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also U.S. v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997).

Once the moving party meets this initial burden, the burden shifts to the party opposing the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The obligation to designate specific facts means that the nonmoving party must do more than make "conclusory allegations." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). It is not enough for the party opposing a properly-supported motion for summary judgment to "rest upon the mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 248. Weak evidence or mere allegations supporting the Plaintiff's causes of action are insufficient to avoid summary judgment. *See Anderson*, 477 U.S. at 248-52. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. If the evidence of a genuine issue of material fact is "merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249-250, citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967) and *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290 (1968).

Ultimately, Cananwill need only demonstrate the absence of support for an essential element of each cause of action to prevail. *See Celotex,* 477 U.S. 317, 324-26 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for

9

discovery and upon motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Id.* at 322.  Given the Plaintiff's inability to establish (1) that the HCH

Transfers were in any respect a fraudulent transfer under 11 U.S.C. § 548, and (2) that the Dallas

Transfer was in any respect a preferential transfer, summary judgment in favor of Cananwill on

all causes of action in the Plaintiff's Complaint is proper.  *See, e.g. Southmark Corp. v. Riddle*

*(In re Southmark Corp.)*, 138 B.R. 820 (Bankr. N.D. Tex. 1992) (granting summary judgment

after finding no genuine issue of material fact concerning, *inter alia*, the issue of reasonable

equivalency).

> **B.      Plaintiff cannot meet his burden of proof with respect to his fraudulent transfer claims.**

Section 548 of the Bankruptcy Code allows a trustee to avoid a transfer as a

constructively fraudulent transfer if the debtor can prove, among other things, that the debtor

received less than reasonably equivalent value in exchange for such transfer.   11 U.S.C.

§ 548(a)(1)(B).  The Plaintiff bears the burden of proof on all elements of a fraudulent transfer

action, including showing that the debtor did not receive reasonably equivalent value in return

for the transfer.  *Mancuso v. T. Ishida USA, Inc. (In re Sullivan)*, 161 B.R. 776, 779 (Bankr. N.D.

Tex. 1993) (citing *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1494 (5th Cir. 1993)).

Plaintiff's Complaint alleges that the HCH Transfers were made "all for entities other

than [HCH]," and that "[HCH], which made the [HCH Transfers], received less than a

reasonably equivalent value in exchange for the [HCH Transfers]." (Complaint ¶¶ 9 and 11).

The Plaintiff failed to allege additional facts, and did not produce any evidence in support of his

conclusory allegation.   In fact, the documents produced by the Plaintiff in this proceeding

demonstrate to the contrary, that HCH received reasonably equivalent value in exchange for the HCH Transfers.

### a.    *Plaintiff failed to produce any evidence demonstrating that the HCH Transfers were not made on behalf of HCH.*

While the Plaintiff alleges that the HCH Transfers were made "all for entities other than [HCH]," the Plaintiff failed to produce evidence demonstrating that the HCH Transfers were not made on behalf of obligations of HCH, or that HCH did not receive reasonably equivalent value in return for each transfer.  To substantiate his claim, the Plaintiff, at a minimum, must show that HCH was not a party to the premium finance agreement.

Plaintiff failed to produce the relevant premium finance agreements.[5]  Of the 226 pages of documents produced by the Plaintiff in response to Cananwill's request for "[a]ll insurance policies and related financing agreements on account of which payments were made that you contend constitute fraudulent and/or preferential transfers to Cananwill," only one unexecuted page of one premium finance agreement was produced.  (Lucas Affidavit, ¶ 8, App. 116-117, 311, 482; *see also* Plaintiff's Responses to First Set of Interrogatories, Response No. 1, App. 97-98 (indicating that the Plaintiff's claims are based on two advices of payment, a statement of account, and two check notations)).  The two advices of payment produced by the Plaintiff (App. 307-308, 478-479), the fax cover sheet (App. 312, 483), as well as the statement of account (App. 309-310, 480-481), are likewise insufficient to establish as a matter of law that reasonably equivalent value was not obtained.

In fact, contrary to Plaintiff's allegations that the HCH Transfers were made for entities other than HCH, Cananwill appears as a creditor of HCH on HCH's Pre-Petition A/P Aging

---

[5] The assets of Cananwill, Inc. were sold to AFCO in February 2009, and as such Cananwill, Inc. no longer has copies of the premium finance agreements relating to the transfers at issue in this case.

i_1452987v.8

Summary (App. 488, 497, 506, 525, 534, 543, 552).    The Pre-Petition Aging Summary demonstrates that HCH owed a debt to Cananwill at the time of the HCH Transfers. *Id.*

Because the Plaintiff failed to produce any evidence demonstrating that the HCH Transfers were not made on behalf of HCH, and because the discovery period has now ended, summary judgment should be granted in favor of Cananwill on the Plaintiff's fraudulent transfer claims.

> ### *b.    As a named insured under each insurance policy relating to the HCH Transfers, HCH received reasonably equivalent value.*

Even if HCH is not a party to the premium finance agreements, HCH is undeniably a named insured under each insurance policy relating to the HCH Transfers, (App. 125, 140, 164, 212).    Additionally, HCH's location was also a covered or designated premises under the property policies.  (App. 127, 129, 131, 155, 157, 166, 195, 241, 243).

As an insured under the policies, HCH received the benefit of the insurance coverage, and therefore received reasonably equivalent value in return for the HCH Transfers.  Plaintiff's bald allegation that HCH received less than reasonably equivalent value in exchange for the HCH Transfers fails to consider the underlying insurance policies.  In fact, the Plaintiff has admittedly not performed any benefit analyses on the insurance policies relating to HCH Transfers, and does not have any knowledge as to the types and amounts of insurance coverage the Debtors were required to have in place at the time of the HCH Transfers.  (Plaintiff's Responses to First Request for Production on Behalf of HCH, Responses Nos. 11 and 12, App. 77; Plaintiff's Responses to First Set of Interrogatories, Response No. 4, App. 99-100).

Because HCH was a named insured on the underlying and related insurance policies, and therefore received reasonably equivalent value in exchange for the HCH Transfers, and because

i_1452987v.8

Plaintiff failed to produce any evidence to the contrary, Cananwill is entitled to summary judgment on the Plaintiff's fraudulent transfer claims.

> ### c.    *Plaintiff's conclusory allegation that HCH received less than reasonably equivalent value in return for the HCH Transfers ignores the Debtors' cash management system and is based on incomplete information.*

The Debtors used the HCH account at Metro Bank as a central operating account for "all operating entities" (i.e., for all the Debtors). (Cash Management Motion, ¶ 12 and Exhibit A thereto, App. 6-7, 14; *see also* Mee Affidavit ¶ 34, App. 33-35). In fact, the Debtors used at least one of the HCH accounts as an operating account to make "all non-payroll disbursements for all hospitals and corporate headquarters." (Cash Management Motion, ¶ 12 and Exhibit A thereto, App. 6-7; Mee Affidavit ¶ 34, App. 33-35). Additionally, according to the Plaintiff, the "payments made for an Affiliated Debtor were designated as an inter-company transfer in the records of the Debtor as a Note Payable and corresponding Note Receivable." (Plaintiff's Responses to Second Set of Interrogatories, Response No. 13, App. 112). This suggests that to the extent the HCH Transfers were not made directly on behalf of HCH, they, at the very least, were made on behalf of HCH's affiliates and in return, HCH recorded an intercompany receivable.

Contrary to the Plaintiff's allegations that reasonably equivalent value was not received, the recording of the intercompany receivable supports a finding that HCH received reasonably equivalent value in exchange for the HCH Transfer.

Moreover, it is clear from the Plaintiff's discovery responses that the Plaintiff has not reviewed the complete financial records of the Debtors relating to the HCH Transfers, or the Debtors' pre-petition cash management procedures as outlined in the Cash Management Motion and Mee Affidavit. (Plaintiff's Response to First Request for Production on Behalf of HCH, ¶¶ 2 and 3, Response Nos. 1, 6, and 8, App. 73-76; Plaintiff's Response to Second Request for

13

Production, ¶¶ 2 and 3, Response No. 15 ("Trustee does not have the entire general ledger of any

Debtor or Related or Affiliated Debtor"), App. 91-92; Plaintiff's Response to Third Request for

Production ¶¶ 2 and 3, Response Nos. 18 ("Trustee does not have copies of any records for 2007

for the Debtors, nor did he rely upon the same, as he was advised by Bridge Associates, LLC,

that the financial records of HCH, [Dallas Hospital] and Affiliated Debtors were incomplete for

the years prior to 2008") and 19 ("The Trustee only has the Houston Community Hospital, Inc.

I/C Transaction Ledger..."), App. 106-108; Plaintiff's Response to First Set of Interrogatories,

¶¶ 2 and 3, Response Nos. 1, 9 ("The Trustee only has records of inter-company transfers

between HCH and its affiliates for the period of January 1, 2008 through August 26, 2008."), 11,

and 12, App. 96-98, 101-102; Plaintiff's Response to Second Set of Interrogatories, ¶¶ 2 and 3,

App. 111-112).

Because the Debtors used the HCH Metro Bank account as an "operating account" for all

entities and recorded intercompany liabilities with respect to the transfers, and the Plaintiff lacks

a complete set of financial records of the Debtors from which to make a determination as to

value received with respect to the HCH Transfers, the Plaintiff cannot satisfy his burden of

proof, and therefore summary judgment should be granted in favor of Cananwill on the

Plaintiff's fraudulent transfer claims.

> ### d.    *The Court must grant summary judgment as to the Plaintiff's fraudulent transfer claims.*

As set forth above, the Plaintiff cannot establish that HCH received less than reasonably

equivalent value in return for the HCH Transfers.   Plaintiff failed to produce any evidence

demonstrating that the HCH Transfers were not made on behalf of HCH.   Further, there is no

question that HCH was a named insured under the insurance policies related to the HCH

Transfers.  Finally, the Plaintiff's allegations ignore the Debtors' cash management system and

the recording of intercompany liabilities, and are based on incomplete information. Therefore, Cananwill is entitled to summary judgment on the Plaintiff's fraudulent transfer claims.

### C.    Plaintiff cannot meet his burden of proof on his preferential transfer claim.

Section 547 of the Bankruptcy Code allows a trustee to avoid a transfer if the trustee can prove, among other things, that the transfer was a transfer to or for the benefit of a creditor, on account of an antecedent debt owed by the debtor before such transfer was made, and that the transfer enabled the creditor to receive more than it would receive if the case were a case under chapter 7, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the provisions of title 11. 11 U.S.C. § 547(b).

Pursuant to section 547(g), the Plaintiff bears the burden of proving that the Dallas Transfer is avoidable as a preference under 11 U.S.C. § 547(b).

### a.    *Plaintiff cannot establish that the Dallas Transfer was a transfer to or for the benefit of a creditor.*

To avoid a transfer under 11 U.S.C. § 547(b), the Plaintiff must prove that the transfer was "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). Plaintiff's Complaint alleges that "Defendant was a creditor of Dallas Hospital at the time [the Dallas Transfer was] made." (Complaint, ¶ 21). The Plaintiff alleged no additional facts, and failed to produce any evidence in support of his allegation that Cananwill was a creditor of Dallas Hospital at the time of the Dallas Transfer.

Of the 203 documents produced by the Plaintiff in response to Cananwill's Request for Production No. 3, which requested "[a]ll insurance policies and related financing agreements on account of which payments were made that you contend constitute fraudulent and/or preferential transfers to Cananwill," no finance agreements or other documents with respect to the Dallas Transfer were produced, other than the three insurance policies previously described. (Lucas

15

Affidavit, ¶¶ 8 and 9, App. 116-117, 318-473); Plaintiff's Response to First Set of Interrogatories, Response No. 1, App. 97-98 (indicating that the advices of payment, statement of account, and the one page of the premium finance agreement relate to the HCH Transfers)). In connection with the Dallas Transfer, the Plaintiff produced only a copy of the check representing the transfer and Dallas Hospital's bank account statements showing that the check was cashed. (Lucas Affidavit, ¶¶ 8 and 9, App. 116-117, App. 317).

Moreover, it appears that the only basis for the Plaintiff's allegation that Cananwill was a creditor of Dallas Hospital is that "Bridge Associates, LLC advised the Trustee that Cananwill was a creditor of Dallas." (Plaintiff's Responses to Second Set of Interrogatories, Response to Interrogatory No. 14, App. 113).   A hearsay assertion by a third party does not evidence creditor status.   As the Plaintiff cannot produce a copy of the premium finance agreement or other documents relating to the Dallas Transfer, the discovery period has ended, and the Plaintiff has no other evidence to support his allegation, the Plaintiff cannot establish that the Dallas Transfer was made "to or for the benefit of a creditor" as required by 11 U.S.C. § 547(b)(1) and therefore summary judgment should be granted in favor of Cananwill with respect to the Plaintiff's preferential transfer claims.

> **b.**    ***Plaintiff cannot establish that the Dallas Transfer was a transfer for or on account of an antecedent debt owed by the Debtor before such transfer was made.***

To avoid a transfer under 11 U.S.C. § 547(b), the Plaintiff must prove that the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2).   Plaintiff's Complaint alleges that "Dallas Hospital made transfers aggregating $19,530.80 to Defendant for antecedent debts." (Complaint, ¶ 19).  The Plaintiff alleged no additional facts, and failed to provide any evidence in support of his conclusory allegation.

16

As set forth above, Plaintiff did not produce the premium finance agreement or other documents with respect to the Dallas Transfer and therefore cannot establish that the Dallas Transfer was on account of an antecedent debt owed by Dallas Hospital. (Lucas Affidavit, ¶¶ 8 and 9, App. 116-117; Plaintiff's Response to First Set of Interrogatories, Response No. 1, App. 97-98 (indicating that the advices of payment, statement of account, and the one page of the premium finance agreement relate to the HCH Transfers)).

As the Plaintiff has no evidence to support his allegation that the Dallas Transfer was made "for or on account of an antecedent debt owed by the debtor before such transfer was made" as required by 11 U.S.C. § 547(b)(2) and the discovery period has ended, summary judgment should be granted in favor of Cananwill with respect to the Plaintiff's preferential transfer claims.

> **c.** ***Plaintiff cannot establish that the Dallas Transfer enabled Cananwill to receive more than it would have received if the case were a case under chapter 7, the transfer had not been made, and Cananwill received payment of such debt to the extent provided under title 11.***

To avoid a transfer under 11 U.S.C. § 547(b), the Plaintiff must prove that the transfer enabled such creditor to receive more than such creditor would receive if the case were a case under chapter 7 of title 11, the transfer had not been made, and such creditor received payment of such debt to the extent provided under title 11.  11 U.S.C. § 547(b)(5).  Plaintiff's Complaint alleges that the Dallas Transfer "enabled Defendant to receive more than it would have received if Dallas Hospital had filed a case under Chapter 7 of the Bankruptcy Code, the transfers had not been made, and the Defendant received payments for such debts in accordance with the provisions of Chapter 7 of the Bankruptcy Code." (Complaint, ¶ 22).  The Plaintiff does not allege any additional facts, and failed to provide any evidence in support of his allegation that the

Dallas Transfer allowed Cananwill to receive more than it would have received in a chapter 7 case.

The Plaintiff has not prepared any insolvency or liquidation analyses with respect to Dallas Hospital's bankruptcy estate. (Plaintiff's Responses to First Request for Production on Behalf of Dallas Hospital, Response Nos. 7, 8, 9, and 10, App. 86).

Additionally, it is clear from the Plaintiff's discovery responses that the Plaintiff has not reviewed the complete financial records of the Debtors relating to the Dallas Transfer. (Plaintiff's Response to First Request for Production on Behalf of Dallas Hospital, ¶¶ 2 and 3, Response Nos. 1, and 6, App. 83-86; Plaintiff's Response to Second Request for Production, ¶¶ 2 and 3, Response No. 15 ("Trustee does not have the entire general ledger of any Debtor or Related or Affiliated Debtor"), App. 91-92; Plaintiff's Response to Third Request for Production ¶¶ 2 and 3, Response Nos. 18 ("Trustee does not have copies of any records for 2007 for the Debtors, nor did he rely upon the same, as he was advised by Bridge Associates, LLC, that the financial records of HCH, [Dallas Hospital] and Affiliated Debtors were incomplete for the years prior to 2008") and 19 ("The Trustee only has the Houston Community Hospital, Inc. I/C Transaction Ledger..."), App. 106-108; Plaintiff's Response to First Set of Interrogatories, ¶¶ 2 and 3, Response No. 1, App. 96-98 and 101-102; Plaintiff's Response to Second Set of Interrogatories, ¶¶ 2 and 3, App. 111-112).

As the Plaintiff has no evidence to establish that the Dallas Transfer "enabled the Defendant to receive more than it would have received if Dallas Hospital had filed a case under Chapter 7 of the Bankruptcy Code, the transfers had not been made, and the Defendant received payments for such debts in accordance with the provisions of Chapter 7 of the Bankruptcy

18

Code," and is relying simply on his conclusory allegations, summary judgment should be granted in favor of Cananwill on the Plaintiff's preferential transfer claims.

### d.   The Court must grant summary judgment as to the Plaintiff's preferential transfer claims.

As set forth above, the Plaintiff cannot establish that the Dallas Transfer was a preferential transfer to Cananwill under 11 U.S.C. § 547. Plaintiff failed to produce any evidence to support his allegations that Cananwill was a creditor of Dallas Hospital, or that the transfer was on account of an antecedent debt owed by Dallas Hospital, as required by 11 U.S.C. § 547(b)(1) and (2). Additionally, no liquidation analysis has been prepared, and the Plaintiff failed to produce any evidence in support of his allegation that Cananwill received more than it would have under chapter 7, as required by 11 U.S.C. § 547(b)(5). Finally, the Plaintiff's conclusory allegations are based on incomplete information. Therefore, Cananwill is entitled to summary judgment on the Plaintiff's preferential transfer claims.

## VI.   CONCLUSION

**WHEREFORE**, for the foregoing reasons, Cananwill, Inc. requests that this Court grant summary judgment in favor of Cananwill, Inc. on all causes of action in the Plaintiff's Original Complaint Against Cananwill, Inc. to Avoid Transfers, and grant Cananwill, Inc. such other relief as is just and proper.

i_1452987v.8

Dated:  March 14, 2011.

Respectfully submitted,

*/s/ Lisa M. Lucas*

Monica L. Latin
  Texas Bar No. 00787881
Lisa M. Lucas
  Texas Bar No. 24067734
**CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, TX  75202
(214) 855-3000
(214) 855-1333 (Fax)

*Attorneys for Cananwill, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed below via ECF-electronic notification and/or U.S. First Class mail, on this 14th day of March 2011.

**John Dee Spicer**                        **Lyndel Anne Mason**
*Chapter 7 Trustee*                        Cavazos, Hendricks, Poirot & Smitham, PC
P.O. Box 820009                            900 Jackson St., Ste. 570
N. Richland Hills, TX  76182               Dallas, TX  75202

*/s/ Lisa M. Lucas*
Lisa M. Lucas

i_1452987v.8